NOTICE

Decision filed 12/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230970

NOS. 5-23-0970, 5-23-0971, 5-23-0972, 5-23-0974 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Moultrie County. |
| | ) | |
| v. | ) | No. 23-CF-28 |
| | ) | No. 23-CF-40 |
| | ) | No. 23-CM-7 |
| | ) | No. 23-DV-7 |
| | ) | |
| JOSHUA A. PRESLEY, | ) | Honorable |
| | ) | Jeremy J. Richey, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Justice Welch concurred in the judgment and opinion.
Justice McHaney dissented, with opinion.

**OPINION**

¶ 1 Defendant, Joshua A. Presley, appeals the October 12, 2023, order of the circuit court of Moultrie County that granted the State's petition to deny pretrial release and ordered him detained pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm the order of detainment.

_____

[1] The press and politicians have also sometimes referred to the Act as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act.

1

¶ 2                    I. BACKGROUND

¶ 3     On April 10, 2023, defendant was issued a notice to appear in court on May 1, 2023. The notice was related to an uncharged claim of endangering the life or health of a child in violation of section 12C-5 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12C-5 (West 2022)). On April 28, 2023, in Moultrie County case No. 23-CM-7, defendant was charged, by information, with endangering the life or health of child, namely B.L. on April 4, 2023, in violation of section 12C-5(a)(2) of the Criminal Code (*id.* § 12C-5(a)(2)). The charge was listed as a Class A misdemeanor. On May 1, 2023, defendant appeared in court, advised the court he could hire private counsel, and requested a continuance. The case was continued to May 22, 2023. Defendant failed to appear at the hearing, and an arrest warrant was issued setting bond in the amount of $3000. Defendant was arrested on May 24, 2023, and was released on bond on May 25, 2023.

¶ 4     In the interim, on May 19, 2023, in Moultrie County case No. 23-DV-7, defendant was charged, by information, with domestic battery after making physical contact of an insulting or provoking nature with B.L. on or about July 2022, in that defendant struck the minor child on the back of the head and pushed B.L.'s head into a corner, in violation of section 12-3.2(a)(2) of the Criminal Code (*id.* § 12-3.2(a)(2)). The charge was listed as a Class A misdemeanor. The same day, an arrest warrant was requested and issued on that charge. The State filed a bond recommendation of $3000 and requested additional bond conditions that (1) precluded defendant's presence at the residence at which the children and mother lived; (2) precluded defendant's contact with minors B.L. or L.P.; (3) precluded defendant from possessing or consuming alcoholic beverages while on bond; and (4) required defendant's enrollment in pretrial services. Defendant was arrested on May 19, 2023, and was released on bond the same day with the conditions requested by the State.

¶ 5     On June 1, 2023, in Moultrie County case No. 23-CF-28, defendant was charged by information with one count of home invasion pursuant to section 19-6(a)(4) of the Criminal Code (*id.* § 19-6(a)(4)) in that defendant entered the home of Jason Stiner on May 31, 2023, threatened to use force against Jason Stiner, and pointed a firearm at Jason Stiner's face. The information was later amended to list the charge as a Class X felony. A complaint for an arrest warrant and a bond recommendation were filed the same day. The State's bond recommendation requested bond in the amount of $250,000 and also requested (1) no contact with Jason Stiner, Ryan Collins, and Andrew Askins; (2) preclusion of defendant's presence at Collins's apartment; (3) defendant be ordered not to possess or consume alcoholic beverages; (4) defendant be ordered not to possess any firearms while on bond; and (5) defendant's enrollment in pretrial services. An arrest warrant with bail in the amount of $250,000 and all of the State's requested conditions was issued on June 1, 2023. Defendant was arrested on June 10, 2023. He was appointed counsel at his first appearance held on June 14, 2023. At his preliminary hearing on June 26, 2023, the court found probable cause. Defendant entered a not guilty plea, requested a jury trial, and was remanded to the custody of the Moultrie County sheriff. On June 28, 2023, defense counsel moved for an independent psychiatric examination related to defendant's fitness to stand trial.

¶ 6     On June 30, 2023, in Moultrie County case No. 23-CF-40, defendant was charged, by information, with criminal damage to government supported property when he damaged a window at the Moultrie County Detention Center and Sheriff's Office on June 14, 2023, in violation of section 21-1.01(a)(1) of the Criminal Code (*id.* § 21-1.01(a)(1)). The charge was listed as a Class 4 felony. On June 30, 2023, the court ordered a psychiatric evaluation by Dr. Jerry Boyd.

¶ 7     The psychiatric evaluation report was filed with the court on July 10, 2023. On July 26, 2023, defense counsel, who was the same in all four of defendant's Moultrie County cases, filed a

motion to reduce defendant's bond in the home invasion case. A pretrial bond report was filed on August 1, 2023. On August 4, 2023, defense counsel filed a motion to modify bail conditions in defendant's domestic violence case. The motions were heard on August 7, 2023, and after hearing argument, the trial court denied the motion in the home invasion case but modified the bond conditions in the domestic violence case to allow defendant to have telephonic or electronic communication with L.P. In-person contact was denied.

¶ 8      On September 15, 2023, the State filed a verified petition seeking denial of defendant's pretrial release. The petition's caption included all four cases (Nos. 23-CF-28, 23-CF-40, 23-CM-7, and 23-DV-7) pending against defendant. The petition alleged defendant was charged with domestic battery or aggravated domestic battery and that defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community. The petition further alleged defendant had a high likelihood of willful flight to avoid prosecution and was charged with a felony described in subsections (a)(1) through (a)(7) of section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1)-(7) (West 2022)) or a felony offense other than a Class 4 offense. Additional grounds alleged by the State included the following facts: (1) defendant was charged in Nos. 23-CF-28 and 23-CF-40 while he was on bond for 23-DV-7, thus violating the condition of his original release that he could not violate any criminal statute; (2) in June 2023, Sergeant Gibbons reviewed several phone calls between defendant and his girlfriend in which defendant expressed that he was hoping to leave the area and find a jurisdiction that would not extradite him if he were to be released; and (3) defendant was on probation in Moultrie County case No. 21-TR-60 when all of his pending cases were committed. Terms of that probation included preclusions from violating any criminal statutes and possessing or consuming alcohol. However, both defendant and his girlfriend provided statements that defendant drank

4

alcohol and sometimes consumed up to a fifth of vodka a day. Attached to the petition were copies of the arrest warrant for the home invasion charge, the arrest warrant for the domestic violence charge, and Sergeant Gibbons's report regarding defendant's telephone calls.

¶ 9 On September 18, 2023, the State filed an amended verified petition again listing all four cases in the caption. The petition contained the same allegations as the initial petition but included an additional allegation that defendant was charged with a forcible felony as listed in section 116-6.1(a)(1.5) of the Code (*id.* § 110-6.1(a)(1.5)) or any other felony which involved the threat of, or infliction of, great bodily harm.

¶ 10 The State's petition to deny defendant pretrial release was heard on October 12, 2023. The State called Andrew Askins, who testified that on May 30, 2023, he was at Ryan Collins's house with Jason Stiner, where they play darts. There was a knock on the door, and defendant walked in uninvited. He had gloves on and was asking for Ryan. Ryan was at work, so they asked defendant to leave, and he did. Andrew and Jason were also at Ryan's house on May 31, 2023. Ryan was at work. There was a knock at the door, and Andrew told Jason, "Don't answer it. It's not our house." Jason heard somebody mumble so he opened the door, but before the door was even cracked open there was a gun pointed at Jason's head, and defendant was pushing himself into the home. The gun was the first thing in the door. Defendant told Jason to "back the f*** up," and when defendant went to close the door, he lifted the mask. Jason tilted the gun up in the air and pushed defendant back. Andrew jumped in to try to get the gun away from defendant. Defendant was not letting go, so Andrew stuck his finger in defendant's eye because defendant stated, "One of you guys is going to have to die," seconds before the shot was fired. Jason called the police, and defendant stood up, fell, broke Ryan's door, stumbled onto the porch, and was gone. They got the gun away from

5

defendant while Jason was on the phone and Andrew was trying to contain defendant so he could be arrested.

¶ 11    The State then called Jason Stiner, but the court denied the State's request to call other witnesses, advising the State could make a proffer. The State indicated that Jason would testify about the events from both nights and that he was the one who opened the door the second night. He saw the gun first, and it was pressed against his forehead. He heard defendant state that "one of you is going to have to die" during the struggle for the gun. Jason called the police.

¶ 12    The State indicated that Deputy Hayes would testify that he was the officer who initially responded to the 911 call. He would testify that Jason's statement in court was similar to that provided after the incident. The State further proffered that Deputy Hayes would testify that he was working for the Sullivan Police Department during the investigation and that he was unable to locate defendant. A warrant was issued in the case. Counsel stated that the officer later attempted to serve the warrant at defendant's girlfriend's house and saw defendant in front of that residence. The officer told defendant not to move, but defendant ran from the deputy through the girlfriend's house. Defendant was later found at a neighbor's residence hiding in the garage, at which time defendant admitted being in the house with Andrew and Jason on May 31, 2023.

¶ 13    The State further indicated it would also call Officer John Smith from the Moultrie County Sheriff's Office, who would testify to two reports dated June 27, 2023, and September 18, 2023. The June 27, 2023, report indicated that, while Officer Smith was on duty, he determined that defendant was attempting to chisel his way out of the jail cell. The September 18, 2023, report revealed that Officer Smith overhead defendant tell his girlfriend that he planned to request a medical release related to his eye problems. Officer Smith noted that medical care was provided to defendant in the jail and defendant exhibited no signs of any need for medical treatment. Officer

6

Smith would also testify about his conversation with a nurse at the Moultrie County jail. The nurse would testify about defendant's medical condition. The State offered the three exhibits attached to its petition. It also tendered a report from the Moultrie County Sheriff's Office authored by Officer Sentel regarding criminal damage to property associated with case No. 23-CF-40. The State would also tender a report authored by Deputy Bryce Farris related to resisting a peace officer and aggravated battery claims that had not yet been charged but occurred while defendant was in custody.

¶ 14    Defense counsel tendered the July 7, 2023, report from Dr. Boyd regarding defendant's fitness to stand trial and a July 20, 2023, report, which was a psychological evaluation for criminal responsibility. Counsel then called Stephanie Grenias. Stephanie lived with defendant's father for 16 years, looked into alternative treatment for defendant, and was pursuing a 90-day residential treatment facility for defendant to address his substance abuse and mental illness. She stated the facility could accommodate an ankle monitor. She confirmed that, once a person was admitted, that person could not leave. She stated the facility had not yet secured a bed for defendant but would do so if the court allowed it. The facility would not provide her with a bed until it knew with certainty defendant was able to take the available bed. Defendant would stay at the jail until the bed was available, and she would transport defendant to the facility. Stephanie and defendant's father would pay for the ankle monitor. Both Stephanie and defendant's father were recovering addicts and alcoholics and had vast experience in this area. They had both been clean for 16 years and worked regularly with people in recovery. She also testified that she wrote a letter to the court. Defense counsel tendered the letter written by Stephanie and information related to an ankle alcohol monitoring bracelet. On cross-examination, Stephanie admitted that being in jail kept defendant from alcohol and that he had methamphetamine in his system when he was hospitalized.

Defense counsel also proffered that defendant indicated interest in the program and wanted to get treatment.

¶ 15 Following the presentation of evidence, the State argued that defendant was charged with a forcible felony involving the threat of or infliction of great bodily harm and that his release posed a real and present threat to the safety of persons in the community as evidenced by the home invasion and domestic violence cases. The State further argued that defendant had a high likelihood of willful flight. The State advised the court that defendant was on probation from case No. 21-TR-60 when the domestic violence incident occurred and was noncompliant with probation. The State further argued that defendant was released from custody in the domestic violence case when the incidents in Nos. 23-CF-28 and 23-CF-40 occurred. The latter case involved defendant being moved from one cell to another, at which time defendant fought the officers and they had to deploy Tasers to obtain his compliance. The State argued these actions showed defendant's propensity for aggressive and violent behavior. The State also addressed the obtained and proffered testimony that indicated the victims were in fear for their lives when the event occurred and would be in fear for their lives if defendant was released. As to Stephanie's testimony, the State argued she was well intended but did not have a full grasp of defendant's conditions. The State argued that defendant was a flight risk as evidenced by defendant's running away and hiding in a neighbor's garage when Deputy Hayes attempted to arrest him, the phone call between defendant and his girlfriend at which time defendant asked her to start looking up places that would not extradite him back to Moultrie County if released, and defendant's attempts to escape from his cell by breaking a window at the jail and trying to dig out of his jail cell. The State concluded by stating defendant was dangerous and a flight risk.

¶ 16    In response, defense counsel stated that they were not asking for defendant to be "set free to walk the streets." They were requesting release into a residential treatment facility that would restrict his freedom. Defense counsel conceded defendant had an alcohol problem but argued that, if defendant was in the facility, he would not be a risk to society in general and would be receiving treatment. Counsel further argued that most of the allegations related to defendant occurred when he was taken into custody and suffering withdrawal. Counsel argued that defendant was now an entirely different person and would not be a risk to anyone while he was in the residential facility. Counsel stated the statute should be liberally construed to effectuate the purpose of relying on pretrial release by nonmonetary means to reasonably ensure an eligible person's appearance in court, the protection of others, and that the person will not attempt or obstruct the criminal justice process. The facility accomplished all those goals.

¶ 17    Following argument, the trial court found the presumption great that defendant committed a detainable offense and that no condition or combination of conditions could mitigate the real and present threat. The court further found that defendant had a high likelihood of willful flight to avoid prosecution. The court stated:

"Quite frankly, I don't think this case is even close. When we look to the willful-flight standard, Defendant was uncooperative with his arrest on the warrant. He tried to dig out of his cell at the county jail. He broke a window. He asked his girlfriend to research locations that will not extradite. I think the evidence is clear and convincing that the willful-flight standard has been met in this case.

Furthermore, Defendant *** is a threat to identifiable people, Mr. Askins that testified today and also Mr. Stiner that was in the residence. He entered that residence with a firearm. That firearm was discharged. There was a struggle, and

9

all that happened, but he also made death threats that someone was going to die that date. You couple that with the Defendant not obeying the Court's orders in the past, committing this new offense in violation of court orders. This is a Defendant that has demonstrated by a very specific behavior to very specific person that he is a threat, and the Court would agree with the State that the only difference here is that Defendant has been incarcerated. So, for the protection of the victims in this case and for the public generally, the Defendant will be detained in this case."

Thereafter, the court advised defendant of his appeal rights, and a written order listing case Nos. 23-CF-28, 23-CF-40, 23-DV-7, and 23-CM-7 was filed. The order addressed the home invasion charge and contained the court's oral findings related to willful flight provided at the hearing and further written findings of dangerousness, noting defendant "not only entered [the] residence with a firearm and it was discharged, but he also made death threats to the occupants."

¶ 18    On October 17, 2023, defendant filed a notice of appeal in each case from the court's October 12, 2023, ruling on the State's petition to deny defendant pretrial release. The notices were all the same and provided the names and addresses for notices, a request for appointment of counsel on appeal, and listed the offense as "21-TR-60 Driving While License Revoked All other cases are pending." The notice of appeal's caption listed the following case numbers: 21-TR-60, 23-CM-7, 23-CF-28, 23-CF-43, and 23-DV-7. On October 20, 2023, counsel filed four amended notices of appeal with the same information and case numbers.

¶ 19    On November 6, 2023, the Office of the State Appellate Defender (OSAD) entered its appearance on behalf of defendant in all four cases. The same day, the State moved for dismissal of defendant's appeals because his notices of appeal failed to comply with Illinois Supreme Court Rule 604(h)(2) (eff. Oct. 19, 2023). The State argued that defendant's notice of appeal failed to

10

provide any request for relief or state why the trial court's findings may be erroneous. It further argued, citing *People v. Stewart*, 2023 IL App (4th) 220432, ¶ 10, that the requirements for the notice of appeal were jurisdictional and defendant's failure to comply with the Rule 604(h) requirements precluded this court from considering the appeal on the merits. The State also argued that the notice failed to provide the State with fair and reasonable notice of the basis of defendant's appeal.

¶ 20    On November 16, 2023, OSAD filed four separate memoranda in support of defendant's Rule 604(h) appeals. The memoranda initially addressed the State's motion to dismiss and classified the pleading as "too cursory to entertain and directly contrary to precedent on notices of appeal." The memoranda further argued that the State's motion failed to cite "a single case on appellate jurisdiction" and therefore forfeited the issue. The memoranda also contended the notice submitted was sufficient to apprise the State of the nature of the proceedings and the "relief sought is obvious: vacatur of the detention order and remand for further proceedings."

¶ 21    Moving to the merits of the appeal, defendant argued that this court should vacate the detention order because the Act did not authorize the trial court to consider the State's petition for detention. After providing argument as to why the court could not consider the State's petition, defendant conceded that his trial counsel did not address this issue while the case was before the trial court and did not include the issue in the notice of appeal. The memorandum requested we review the issue as "plain error," citing *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 23, and stating that *Vingara* "held that the same error affected substantial rights of the defendant under the second prong of the plain-error doctrine."

¶ 22    On November 22, 2023, the State filed four separate motions to strike defendant's memoranda. The motions addressed the State's pending motion to dismiss as well as the

11

defendant's memoranda that only presented new arguments on appeal that were not related to anything in defendant's notice of appeal. The State's motions contended that defendant's memoranda were "a thinly veiled attempt to argue issues completely barred by the plain language permitting appeals under Rule 604(h) as it raises grounds unrelated to the notice of appeal in this case." We consolidated the appeals and will address the pending motions with the case.

¶ 23                                    II. ANALYSIS

¶ 24    We first address the State's motion to dismiss this case for a lack of jurisdiction based on the lack of information contained in the notice of appeal. We note that, even if the issue were not raised, this court "has an independent duty to consider issues of jurisdiction." *People v. Smith*, 228 Ill. 2d 95, 104 (2008). Rule 604(a)(1) and (h)(1) provides appellate jurisdiction for cases involving pretrial release. Ill. S. Ct. R. 604(a)(1), (h)(1) (eff. Sept. 18, 2023). Rule 604(h)(2) governs the notices of appeal and states, "Review shall be by Notice of Appeal filed in the circuit court within 14 days of the entry or denial of the order from which review is being sought. The Notice of Appeal shall describe the relief requested and the grounds for the relief requested." Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023). Although not required, an appellant may file a memorandum that is limited in length and due within 21 days after the supporting record is filed. *Id.* A response to the notice of appeal or appellee's memorandum is similarly limited in length and is due within 21 days of the filing of appellant's memorandum. *Id.*

¶ 25    Here, while defendant's notice of appeal failed to contain any request for relief or grounds for the relief requested, the notice of appeal clearly identified the trial court's October 12, 2023, order granting the State's petition for detention as the basis of the appeal. Such order is one in which Rule 604(a)(1) and (h)(1) confers jurisdiction on this court. Ill. S. Ct. R. 604(a)(1), (h)(1) (eff. Sept. 18, 2023). Further, Rule 606(a) states that, "Appeals shall be perfected by filing a notice

12

of appeal with the clerk of the trial court. *** No step in the perfection of the appeal *other than the filing of the notice of the appeal is jurisdictional.*" (Emphasis added.) Ill. S. Ct. R. 606(a) (eff. Sept. 18, 2023). Here, there is no dispute that defendant's notice of appeal was timely filed with the circuit clerk.

¶ 26 We do not afford any credence to the State's contention that defendant's notice failed to apprise it of the issues on appeal. A notice of appeal is generally construed liberally. *Smith*, 228 Ill. 2d at 104. "The purpose of a notice of appeal is to inform the prevailing party in the trial court that the other party seeks review of the judgment." *Id.* " '[N]otice should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal.' " *Id.* at 105 (quoting *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 229 (1991)). While defendant's notice of appeal lacked specificity, it was clear that the appeal stemmed from the trial court's October 12, 2023, order denying pretrial release, unlike the defendant in *Smith*, who failed to include the correct date of the judgment from which he was appealing or the relief sought and instead provided a completely different date for the judgment. *Id.* Here, the deficiency is one of form, rather than substance, and no prejudice can be shown to the State; therefore, defendant's " 'failure to comply strictly with the form of the notice is not fatal.' " *Id.* (quoting *Lang*, 222 Ill. App. 3d at 230). Accordingly, we have jurisdiction over this appeal and deny the State's motion to dismiss the appeal for a lack of jurisdiction.

¶ 27 Turning to the merits, defendant argues that the trial court did not have authority to issue a ruling on the State's petition to deny release because the State's petition was untimely. This court has previously issued rulings agreeing that timeliness of the State's petition is required. See *People v. Rios*, 2023 IL App (5th) 230724, ¶ 12; *People v. Mosley*, 2023 IL App (5th) 230823-U, ¶ 16;

13

*Vingara*, 2023 IL App (5th) 230698, ¶ 18. Here, as in *Mosley* and *Vingara*, defendant concedes that the argument presented on appeal is not one that was presented to the trial court and requests second-prong plain-error review. While both *Mosley* and *Vingara* allowed for plain-error review, we believe further consideration of the issue is warranted, as no analysis of the issue was provided.

¶ 28    "It is fundamental to our adversarial system that counsel object at trial to errors." *People v. Carlson*, 79 Ill. 2d 564, 576 (1980) (citing *People v. Roberts*, 75 Ill. 2d 1, 10 (1979)). Courts have generally held that the failure to object forfeits the right to consider the question on appeal. *Id.* A criminal defendant who fails to object to an error has forfeited the error, precluding review of the error on appeal. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). The rationale behind this result is "because failure to raise the issue at trial deprives the circuit court of an opportunity to correct the error, thereby wasting time and judicial resources." *People v. Jackson*, 2022 IL 127256, ¶ 15 (citing *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)). "This forfeiture rule also prevents criminal defendants from sitting idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is not favorable." *Id.*

¶ 29    Forfeiture, however, is not absolute, and Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) "embodies the exception" to the forfeiture rule. *Carlson*, 79 Ill. 2d at 576. "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). In order to consider an error that was not raised, the appealing party must request review under the plain-error doctrine. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Here, this was done.

¶ 30    However, "[t]he plain error rule does not call for the review of all forfeited errors." *Jackson*, 2022 IL 127256, ¶ 19. The "plain error rule is a narrow exception to forfeiture principles." *Id.* ¶ 18.

14

Rule 615(a) limits application to "[p]lain errors or defects affecting substantial rights." Application of the rule allows for review of a forfeited error under two possible prongs. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). Under the first prong, plain-error review is applied when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *Id.* at 565. Under the second prong, plain-error review is applied when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* The burden of persuasion rests with the defendant. *Thompson*, 238 Ill. 2d at 613. A defendant that requests plain-error review must present an argument on how either of the two prongs of the plain-error doctrine are satisfied. *Id.* "[W]hen a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain-error review." *Hillier*, 237 Ill. 2d at 545-46.

¶ 31     Here, defendant requested plain-error review under the second prong. In support, defendant argued that the Act does not allow the State to file a petition to deny release unless the petition is filed at the defendant's first appearance or shortly thereafter upon their arrest and release, citing section 110-6.1(c) (725 ILCS 5/110-6.1(c) (West 2022)). Defendant contended that, because "the Act does not permit the State to file a petition to detain an inmate who remains incarcerated simply because they could not meet their financial obligation of bond, the court did not have authority to hear the State's petition against Presley." In support, defendant cites *Rios*, 2023 IL App (5th) 230724, ¶ 12, and *Vingara*, 2023 IL App (5th) 230698, ¶ 18, which found the State's petition to deny release untimely and stated the court did not have authority to detain those defendants. Defendant further argues, citing *People v. Smith*, 2016 IL App (1st) 140496, ¶ 15, and Rule 615(a),

15

that a " 'misapplication of the law' that affects a defendant's 'fundamental right to liberty,' constitutes plain error as it affects the integrity of the judicial system."

¶ 32    Although not addressed by defendant, "[t]he first analytical step under the plain error rule is to determine whether there was a clear or obvious error." *People v. Moon*, 2022 IL 125959, ¶ 22. "[T]he term 'plain' as used in the plain-error rule is synonymous with 'clear' or 'obvious'; error is not plain if the law was 'unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified.' " *In re M.W.*, 232 Ill. 2d 408, 431 (2009) (quoting *Piatkowski*, 225 Ill. 2d at 565 n.2 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993))). The plain-error analysis is based on the law at the time of trial. *People v. Williams*, 2015 IL App (2d) 130585, ¶ 11. Here, the trial court's hearing on the State's petition to deny defendant pretrial release was held on October 12, 2023. This court's decision in *Rios*, finding a trial court's similar action erroneous, was not filed until November 9, 2023. *Rios*, 2023 IL App (5th) 230724.

¶ 33    Although the trial court did not have the guidance of *Rios*, the law is clear when the plain language of the statute reveals the error was clear and obvious. *In re M.W.*, 232 Ill. 2d at 432. Here, the *Rios* decision was based solely on statutory construction and relied on no extrinsic aids in interpreting the statute. Further, the statutory language examined in *Rios* was the same as that before the trial court. Therefore, we find the error is properly classified as "clear and obvious." Although the law was in its infancy at the time of the hearing, the plain language of the statute clearly delineates when the State is authorized to file a petition for detention. As such, it is also necessary to address the second requirement for second-prong plain error.

¶ 34    "[U]nder the second prong of the plain error rule, the reviewing courts are not concerned with 'prejudicial' error." *Jackson*, 2022 IL 127256, ¶ 24. "[T]he concern under the second prong of the plain error rule is addressing unpreserved errors that undermine the integrity and reputation

16

of the judgment process regardless of the strength of the evidence or the effect of the error on the trial outcome." *Id.* "[E]rrors that fall under the purview of the second prong of the plain error rule are rare." *Id.* ¶ 27. While the Illinois Supreme Court "has equated the second prong of the plain error rule with 'structural error' " (*id.* ¶ 28), plain error is not restricted to the types of structural error previously recognized by the United States Supreme Court. See *People v. Clark*, 2016 IL 118845, ¶ 46. Those structural errors include "a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Jackson*, 2022 IL 127256, ¶ 29. The Illinois Supreme Court has also found second-prong plain error when the defendant was convicted of uncharged offenses, albeit the convictions were for charges less severe than those charged (see *Clark*, 2016 IL 118845) or a failure to swear the jury in with the trial oath (*Moon*, 2022 IL 125959). "The commonality of these errors is that they affect the framework within which the trial proceeds, rather than mere errors in the trial process itself." *Jackson*, 2022 IL 127256, ¶ 29.

¶ 35     " '[T]he purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial.' " *Id.* (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017)). "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Thompson*, 238 Ill. 2d at 609. Errors that do not involve a fundamental right or even a constitutional protection may not be classified as a structural error. See *Jackson*, 2022 IL 127256, ¶¶ 44, 53 (rejected claim that jury polling was reviewable under second-prong plain error because polling the jury was not a constitutional or fundamental right); *Thompson*, 238 Ill. 2d at 610-11 (rejected claim that a violation of Rule 431(b) (Ill. S. Ct. R. 431(b)

17

(eff. July 1, 2012)) was structural error because, "[w]hile trial before a biased jury is structural error subject to automatic reversal, failure to comply with Rule 431(b) does not necessarily result in a biased jury" or "render a trial fundamentally unfair or unreliable").

¶ 36    The analysis in *Jackson* and *Thompson* addressing what the court considers in determining whether an error is so egregious that it obtains the rare classification of second-prong plain structural is instructive. In *Jackson*, the court found the error in jury polling was not structural error because an error in the permissive procedure did not necessarily deny the fundamental right to juror unanimity and was "not an essential element of the framework within which a criminal trial proceeds." *Jackson*, 2022 IL 127256, ¶¶ 47, 65. The court further reasoned that "[j]ury polling itself is not a fundamental constitutional right" and, therefore, the jury polling process is not part of the very framework in which the trial process proceeds. *Id.* ¶ 67.

¶ 37    Similarly, in *Thompson*, the issue was whether violation of Rule 431(b) was structural error. *Thompson*, 238 Ill. 2d at 608. The court reviewed its earlier decision in *People v. Glasper*, 234 Ill. 2d 173 (2009), in which the same rule was considered, albeit, at the time of *Glasper*, Rule 431(b) only mandated questioning if requested by the defendant. *Thompson*, 238 Ill. 2d at 609 (citing *Glasper*, 234 Ill. 2d at 196). "Given the language and history of the rule, [the Illinois Supreme Court] concluded that the trial court's violation of Rule 431(b) did not rise to the level of structural error." *Id.* at 609-10 (citing *Glasper*, 234 Ill. 2d at 199-200). *Thompson* acknowledged the difference between the permissive language in the prior rule and the mandatory language in the amended rule but again found the error was not structural, finding the essential point in both *Glasper* and *Thompson* was that the court's failure to comply with the rule did "not automatically result in a biased jury, regardless of whether that questioning is mandatory or permissive." *Id.* at 610. The court found that other methods, including jury instructions and admonishments, ensured

18

the lack of jury bias, thereby precluding a violation of Rule 431(b) from rising to structural error. *Id.*

¶ 38 Here, defendant's claim is based on his fundamental right to liberty and relies on *Smith*, 2016 IL App (1st) 140496, ¶ 15, which found an erroneous sentence (as a Class X offender with a range of 6 to 30 years' imprisonment instead of a Class 3 felony that had a sentencing range of 2 to 10 years' imprisonment) amounted to plain error because it affected defendant's fundamental right to liberty. *Id.* ¶¶ 15, 16. The underlying basis for the language in *Smith* is seen in *People v. McMann*, 305 Ill. App. 3d 410, 414 (1999), which stated, "Sentencing issues may be reviewed as plain error where the issue is one of misapplication of the law, as the right to be sentenced is substantial and affects a defendant's fundamental right to liberty." In the case at bar, sentencing is not an issue; in fact, the trial has not even commenced. It is equally notable that the defendant's arguments make no effort to explain why a denial of pretrial release is similar to a sentencing error beyond a vague claim that both involve a defendant's "fundamental right to liberty."

¶ 39 "Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). The protections provided by the fourth amendment are imposed on every state pursuant to the due process clause in the fourteenth amendment "because 'the right to be free from arbitrary government intrusion is basic to a free society and implicit in the concept of ordered liberty.' " *People v. Lampitok*, 207 Ill. 2d 231, 240 (2003) (quoting *People v. James*, 163 Ill. 2d 302, 311 (1994)). As to the issue at bar, the State's authority to "permissibly detain a person suspected of committing a crime prior to a formal adjudication of guilt" is well established, as is the State's "substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences, or that confinement of such persons pending trial is a

19

legitimate means of furthering that interest." *Bell v. Wolfish*, 441 U.S. 520, 534 (1979) (citing *Gerstein*, 420 U.S. at 111-14, and *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). In *Gerstein*, the United States Supreme Court held "that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114. The Supreme Court later found that, although the presumption of innocence was important, it had "no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." *Bell*, 441 U.S. at 533. Therefore, under the fourth amendment, a probable cause hearing is sufficient protection of a defendant's fundamental right to liberty. While such hearing typically occurs at the defendant's preliminary hearing (*People v. Redmond*, 67 Ill. 2d 242, 246 (1977)), an untimely petition to detain defendant does not violate the due process right under the fourth amendment; as long as the court found probable cause, the defendant can be detained prior to his trial. *Gerstein*, 420 U.S. at 115.

¶ 40     While a state cannot reduce protection of individual rights below the minimum required under the United States Constitution, a state may impose a greater protection of rights under its state constitution. See *Oregon v. Hass*, 420 U.S. 714, 719 (1975); *Williams v. Georgia*, 349 U.S. 375, 399 (1955) (Clark, J., dissenting). Therefore, we must also consider the Illinois Constitution to determine if any greater right is found therein.

¶ 41     The Illinois Constitution states, "All persons shall be bailable by sufficient sureties, except for the following offenses where the proof is evident or the presumption great *** [and] when the court, after a hearing, determines that release of the offender would pose a real and present threat to the physical safety of any person." Ill. Const. 1970, art. I, § 9; *Rowe*, 2023 IL 129248, ¶ 25. Accordingly, the Illinois Constitution also does not guarantee release of every arrested defendant. The due process right provided by the Illinois Constitution is the right to a hearing to determine

20

whether pretrial release is proper. Pursuant to the Illinois Constitution, this decision is issued after the court balances the defendant's fundamental right to liberty against the necessity of protecting the public. Here, defendant was provided a hearing during which the court found the presumption great that defendant committed a qualifying offense and that his release posed a real and present threat to the physical safety of any person, persons, or the community. As such, any due process requirements stemming from defendant's fundamental right to liberty under the Illinois Constitution were met.

¶ 42    As in *Jackson* and *Thompson*, while an untimely petition under section 110-6.1 may touch upon rights, such error does not violate defendant's rights under either the state or federal constitutions. Those rights, including the right to liberty, only require a hearing—which occurred here. It is relevant that none of defendant's arguments point to anything that suggests that an error in granting an untimely petition requesting denial of pretrial release "undermines the framework" in which his trial will proceed as guaranteed by the federal and state constitutions. Such error is therefore not a substantial right entitled to relief under the second prong of plain-error review. Accordingly, we find defendant failed to meet his burden of persuasion, and we deny his request to find the trial court's error was so egregious to warrant it eligible for second-prong plain error.

¶ 43    The only other argument raised by defendant in his memoranda related to the trial court's order denying release related to his misdemeanor claim. Here, the argument is based on the lack of statutory authority to detain related to a misdemeanor claim. However, again, no claim of error or objection related to this issue was made before the trial court, and no request for plain-error review—under either prong—was requested or argued. Accordingly, we will honor defendant's forfeiture of the argument. See *Hillier*, 237 Ill. 2d at 545-46.

¶ 44    None of the errors raised in defendant's memoranda were presented to the trial court. Second-prong plain-error review is inapplicable, and no request for plain-error review was made for the remaining claim. As such, we find all the issues raised by defendant on appeal were forfeited and affirm the court's order denying defendant pretrial release.

¶ 45                                    III. CONCLUSION

¶ 46    For the reasons stated above, we affirm the court's order of pretrial detention.

¶ 47    Affirmed.

¶ 48    JUSTICE McHANEY, dissenting:

¶ 49    While I agree with the majority that we have jurisdiction over the appeal, I respectfully dissent from the conclusion of the majority that second-prong plain-error review is inapplicable in this case. The majority correctly notes that in the cases of *People v. Vingara*, 2023 IL App (5th) 230698, and *People v. Mosley*, 2023 IL App (5th) 230823-U, no *significant analysis* of second-prong plain-error review was provided. Significant analysis was not provided because it was not necessary. In *People v. Smith*, 2016 IL App (1st) 140496, the court held that the defendant's failure to preserve an erroneous sentencing issue could still be considered under the second prong of plain-error review. Without any *significant analysis*, the court stated, "The court's misapplication of the law amounted to plain error because it affected defendant's fundamental right to liberty ***." *Smith*, 2016 IL App (1st) 140496, ¶ 15. It is axiomatic that a defendant charged with a criminal offense is presumed innocent of that charge until he or she is adjudicated guilty beyond a reasonable doubt. It is equally axiomatic that locking that defendant in a jail cell until his or her presumption of innocence is overcome affects the defendant's fundamental right to liberty. It matters not that the defendant's hearing on the State's petition for detainment occurred. The issue here is whether that hearing should have been allowed to occur at all. The majority concedes that

22

the State's petition was untimely. *Vingara* and *Mosley* correctly recognized that nothing so fundamentally affects a defendant's right to liberty as being deprived of that liberty before the State overcomes the defendant's presumption of innocence.

¶ 50 Citing *People v. Jackson*, 2022 IL 127256, ¶ 63, the majority seeks to preclude second-prong plain-error review here by arguing that pretrial detention merely "touches" on a fundamental right. With respect to the Act, it is abundantly clear that the intent of the legislature was to consider pretrial detention as not merely "touching" on a fundamental right but as enveloping a fundamental right.

¶ 51 For the foregoing reasons, I respectfully dissent.

*People v. Presley*, 2023 IL App (5th) 230970

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Moultrie County, Nos. 23-CF-28, 23-CF-40, 23-CM-7, 23-DV-7; the Hon. Jeremy J. Richey, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd and Carolyn R. Klarquist, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |