NOTICE
Decision filed 01/25/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231051

NO. 5-23-1051

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 22-CF-1583 |
| | ) | |
| BRANDEN L. SHANNON, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justice Boie concurred in the judgment and opinion.
Presiding Justice Vaughan dissented, with opinion.

**OPINION**

¶ 1    The defendant, Branden L. Shannon, appeals the trial court's written order of October 20, 2023, denying the defendant's pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (further amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Because the defendant was arrested and detained prior to the date the Act went into effect, this appeal presents a narrow issue relevant to only those defendants who were

_____

[1]The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act." Neither name is official, as neither appears in the Illinois Compiled Statutes or public act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

1

arrested and detained prior to the effective date of the Act. For the following reasons, we vacate the circuit court's detention order of October 20, 2023.[2]

¶ 2                                    I. BACKGROUND

¶ 3    On October 14, 2022, the defendant was charged by information with one count of unlawful possession with the intent to deliver methamphetamine, a Class X felony, and one count of unlawful possession with the intent to deliver cannabis, a Class 3 felony. On the same date, a warrant of arrest was issued for the defendant, and his bail was set at $100,000, with 10% to apply and no additional conditions of release. The defendant was arrested and detained, and he remained in pretrial detention.

¶ 4    On September 12, 2023, six days before the Act became effective, the State filed a verified petition to deny defendant pretrial release pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). The defendant did not file a motion requesting a hearing to have his monetary condition of bail removed.

¶ 5    The State's petition was called for hearing on October 20, 2023. The defendant's counsel did not object to the filing of the petition.

¶ 6    At the beginning of the hearing, the following discussion occurred:

   "THE COURT: We're on the record, then, in 22-CF-1583, People of the State of Illinois versus Branden Shannon. Present today on behalf of the People, Assistant State's Attorney Tatiyana Rodriquez. Present today on behalf of Mr. Shannon, Mr. Dennis Hatch, Attorney at Law. And Mr. Branden Shannon is present in open court.

---

[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before January 22, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

The matter comes before the Court today on the People's verified petition for pretrial detention which they filed on September 12, 2023. And I guess your request, Mr. Hatch is, of course, for your client to be released on conditions.

MR. HATCH: Yes.

THE COURT: And so we're going to conduct this hearing today pursuant to the Pretrial Fairness Act."

¶ 7 At the conclusion of the hearing, the circuit court entered an order denying the defendant pretrial release. The defendant filed a timely notice of appeal on November 2, 2023.

¶ 8 II. ANALYSIS

¶ 9 On appeal, the defendant argues, *inter alia* , that the circuit court erred when it granted the State's petition to detain him because the State did not have the authority to file a petition to deny pretrial release due to the timing requirements of section 110-6.1(c)(1) (*id.* § 110-6.1(c)(1)). The defendant acknowledges that his attorney did not object to the State's petition and that this claim of error was not raised in his notice of appeal. The defendant seeks review of the claimed error under the second prong of the plain-error doctrine. Under the second prong of plain-error review, a reviewing court may consider a forfeited error when the error is so serious that it deprives the defendant of a substantial right. *People v. Herron*, 215 Ill. 2d 167, 170 (2005).

¶ 10 On appeal, the State argues that the defendant's request that he be released in response to the court's question at the beginning of the hearing on the State's petition to detain should be treated as a motion for a hearing under sections 110-5 and 110-7.5(b). 725 ILCS 5/110-5, 110-7.5(b) (West 2022).

¶ 11 After reviewing the intradistrict split created by *People v. Presley*, 2023 IL App (5th) 230970, we follow our prior decisions and precedent in *People v. Rios*, 2023 IL App (5th) 230724,

3

*People v. Vingara*, 2023 IL App (5th) 230698, *People v. Swan*, 2023 IL App (5th) 230766, *People v. Mosley*, 2023 IL App (5th) 230823-U, *People v. Gurlly*, 2023 IL App (5th) 230830-U, and *People v. Scott*, 2023 IL App (5th) 230897-U. Accordingly, we will apply second prong plain-error review, as the defendant's fundamental right to liberty is affected by a hearing to detain him until trial when said hearing was not authorized by statute. The Code makes clear on its face that the intent is to protect a person's fundamental right to liberty before trial, as set forth below:

"(a) All persons charged with an offense shall be eligible for pretrial release before conviction. It is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release ***.

* * *

(e) This Section shall be liberally construed to effectuate the purpose of relying on pretrial release by nonmonetary means to reasonably ensure an eligible person's appearance in court, the protection of the safety of any other person or the community, that the person will not attempt to obstruct the criminal justice process, and the person's compliance with all conditions of release ***." 725 ILCS 5/110-2(a), (e) (West 2022).

¶ 12 This court determined that the plain language of section 110-6.1(c)(1) (*id.* § 110-6.1(c)(1)) set forth a deadline for the State to file a petition to detain. Specifically, this court determined:

"The State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required. Alternatively, the State may file a petition to detain the defendant within 21 calendar days after the arrest and release of the defendant; however, reasonable notice is to be provided to the defendant under this circumstance." *Rios*, 2023 IL App (5th) 230724, ¶ 10.

4

¶ 13    This court went on to find that the exceptions to the above timing requirement set forth in section 110-6 (725 ILCS 5/110-6 (West 2022)) were not applicable to the defendant since the defendant had not been released following his arrest and no new offenses had been alleged. *Rios*, 2023 IL App (5th) 230724, ¶ 12. As such, this court determined in *Rios* that the State's petition to detain pursuant to section 110-6.1 was untimely and that the circuit court did not have the authority to detain the defendant pursuant to the untimely petition. *Id.* For the reasons set forth in *Rios*, we make the same determination in this matter, and we find that the State's petition was untimely and that the circuit court did not have the authority to detain the defendant pursuant to the untimely petition.

¶ 14    This court, in *Rios*, went on to find that the defendant fell within section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)), as he was a person who remained in pretrial detention, on or after January 1, 2023, after having been ordered released with pretrial conditions. *Rios*, 2023 IL App (5th) 230724, ¶ 14. Section 110-7.5(b) states that such a defendant "shall be entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2022). This court further found that, in reviewing and analyzing sections 110-6.1(c)(1), 110-6, and 110-5(e) (*id.* §§ 110-6.1(c)(1), 110-6, 110-5(e)), along with one another and the entire Code, defendants, such as the defendant in *Rios* and the defendant in this matter, have the following two options:

> "Under sections 110-7.5(b) and 110-5(e), a defendant may file a motion seeking a hearing to have their pretrial conditions reviewed anew. Alternatively, a defendant may elect to stay in detention until such time as the previously set monetary security may be paid. A defendant may elect this option so that they may be released under the terms of the original bail." *Rios*, 2023 IL App (5th) 230724, ¶ 16.

5

¶ 15　This court came to the above conclusion because, although the plain language of section 110-1.5 of the Code (725 ILCS 5/110-1.5 (West 2022)) abolished the requirement of posting a monetary bail, it did not eliminate the option to post the previously ordered security, and some defendants may prefer the second option, as opposed to requesting a hearing. *Rios*, 2023 IL App (5th) 230724, ¶ 17. Accordingly, the defendant may elect to stand on his original pretrial condition to post monetary bail, or he may file a motion for hearing under section 110-5(e).

¶ 16　In this case, the defendant did not file a motion for the removal of the monetary condition of bail. Defense counsel's argument that the defendant should be released, made in response to the State's petition to detain, does not rise to the level of the defendant making an election to have a hearing to remove the monetary condition of bail.

¶ 17　We find that the circuit court erred in granting the State's untimely motion to deny pretrial release and that the error affected substantial rights of the defendant under the second prong of the plain-error doctrine. In light of this determination, we need not address the defendant's remaining issues on appeal. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007); *Swan*, 2023 IL App (5th) 230766, ¶ 26. Accordingly, the detention order issued October 20, 2023, is vacated, and the original bond is reinstated. On remand, defendant may elect to stand on the terms of his original pretrial conditions—an election that requires no action on his part—or he may file a motion for a hearing under section 110-5(e). *Swan*, 2023 IL App (5th) 230766, ¶ 25.

¶ 18　　　　　　　　　　　　　　III. CONCLUSION

¶ 19　For the reasons stated, we vacate the circuit court's order granting the State's petition to detain and remand the matter to the court for further proceedings.

¶ 20　Order vacated; cause remanded.

¶ 21    PRESIDING JUSTICE VAUGHAN, dissenting:

¶ 22    Here, the majority applies second prong plain error and finds that "defendant's fundamental right to liberty is affected by a hearing to detain him until trial when said hearing was not authorized by statute" (*supra* ¶ 11), citing section 110-2(a) and 110-2(e) (725 ILCS 5/110-2(a), (e) (West 2022)) in support of its finding. I disagree.

¶ 23    First, it is pure speculation that defendant will be detained "until trial." The Code requires, when an order of detention is issued pursuant to section 110-6.1(e), as occurred here, "the defendant shall be brought to trial on the offense for which he is detained within 90 days after the date on which the order for detention was entered." *Id.* § 110-6.1(i). If defendant's trial does not occur within that 90-day period, "he shall not be denied pretrial release." *Id.* As such, if defendant's trial does not occur within 90 days from the date of the detention order, defendant must be provided pretrial release. Further, once a detention order is issued, "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5).

¶ 24    Second, the issue of second prong plain error was recently addressed in *People v. Presley*, 2023 IL App (5th) 230970, ¶¶ 27-42. Here, as in *Presley*, defendant's claim of error is based on counsel's failure to file a motion to strike the State's petition requesting defendant's detainment. As shown in *Presley*, mere acceptance that an error occurred is insufficient by itself to find second prong error; the error must "affect the framework within which the trial proceeds." (Internal quotation marks omitted.) *Id.* ¶ 34. The rare instances where second prong error is found are those necessary to ensure "certain basic, constitutional guarantees" that "define the framework of any

7

criminal trial" are met. (Internal quotation marks omitted.) *Id.* ¶ 35. In *Presley*, this court considered defendant's rights under both the United States and Illinois Constitutions and found that defendant's rights were not violated under either and therefore defendant was not entitled to relief under second prong plain error. *Id.* ¶¶ 39-42. In the current case, no additional or novel argument was presented. As such, I would hold the claimed error is not entitled to second prong plain error review.

¶ 25    Third, defendant's claim of ineffective assistance of counsel fares no better. Defendant raises, in the alternative, a claim of ineffective assistance of counsel due to trial counsel's failure to file a motion to strike the State's petition to deny pretrial release. The United States Supreme Court previously held "that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008). In the context of the sixth amendment, the United States Supreme Court has held that the right to assistance of counsel is the right to "effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). This level of assistance is evaluated under the standard addressed in *Strickland v. Washington*, 466 U.S. 668 (1984), as adopted in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984).

¶ 26    "To prevail on a claim of ineffective assistance of counsel [under *Strickland*], a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23. "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S.

8

at 694). A failure to satisfy either *Strickland* prong "precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 27    The failure to establish prejudice alone is a sufficient basis to deny a claim of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 91. Here, defendant's argument regarding prejudice is infirm. Defendant argues that he was "prejudiced by counsel's deficiency because he lost the ability to be released." In support, he cites *Lafler v. Cooper*, 566 U.S. 156, 165 (2012), for the proposition that "ineffective assistance of counsel 'can result in *Strickland* prejudice because any amount of [additional] jail time has Sixth Amendment significance.' " My review of *Lafler* reveals the quoted language stems from *Glover v. United States*, 531 U.S. 198, 203 (2001), a case addressing postconviction sentencing. *Lafler*, 566 U.S. at 165.

¶ 28    Here, we are not dealing with an inaccurate sentencing range to which constitutional right deprivations are rightfully assigned.[3] While *Strickland* prejudice is not limited to errors that affect the fairness of a trial (*id.* (the Court does not follow "a rigid rule that an otherwise fair trial remedies errors not occurring at the trial itself")), the analysis has always focused on the outcome of the case itself. In *Glover*, the alleged error of counsel prejudiced defendant because it increased the ultimate term of imprisonment—*i.e.*, affected the ultimate outcome of the proceedings. *Id.* at 203-04.

¶ 29    Another example is *Missouri v. Frye*, 566 U.S. 134, 145 (2012), which found deficient performance where the defendant's trial counsel failed to inform defendant of a plea offer prior to the lapse of the offer. To establish prejudice in such a situation, defendant must "show a reasonable

---

[3]Although prejudice from ineffective assistance of counsel does not require a constitutional violation (*Lafler*, 566 U.S. at 166-68), there is no constitutional limitation on when the State may request pretrial detention and an untimely pretrial detention petition does not violate the due process rights afforded under either the state or federal constitutions. No constitutional deprivation is seen as long as a hearing is held to address the necessity of detention. See *Gerstein v. Pugh*, 420 U.S. 103, 115 (1975); Ill. Const. 1970, art. I, § 9; *Rowe v. Raoul*, 2023 IL 129248, ¶ 25.

probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147. The defendant's later acceptance of a plea deal with less favorable conditions than the offer never provided by counsel was sufficient to show prejudice. *Id.* at 148. However, the case was remanded because the prejudice prong also required the defendant to show a reasonable probability that, if the prosecution had the discretion to cancel it or the court had the discretion to reject the plea, there was "a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id.*

¶ 30     Similarly, in *Lafler*, the claim of ineffective assistance stemmed from a plea deal, but unlike that in *Frye*, counsel advised the defendant of the plea offer, which included dismissal of some of the charges and a sentence between 51 and 85 months. *Lafler*, 566 U.S. at 161. The defendant accepted the deal but later rejected it because his attorney convinced him that the prosecution would be unable to establish intent to murder because the victim was shot below the waist. *Id.* The prosecution offered a significantly less favorable plea deal on the first day of trial, which was also rejected. *Id.* Following a trial, the defendant was convicted and received "a mandatory minimum sentence of 185 to 360 months' imprisonment." *Id.* On these facts, the parties agreed that trial counsel's performance was deficient based on the advice that the defendant could not be convicted at trial. *Id.* at 163. The sole issue was how the *Strickland* prejudice test should be applied. *Id.* The Court found that prejudice could be shown "if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.* at 168. As such, prejudice encompasses instances involving plea bargains and trial counsel's actions that undermine the fairness of the outcome of the proceedings.

10

¶ 31 Similar to *Frye* and *Lafler*, other cases that address a claim of prejudice that involve guilty pleas concern counsel's error that resulted in the defendant pleading guilty. See *Lee v. United States*, 582 U.S. 357, 364 (2017); see also *People v. Valdez*, 2016 IL 119860, ¶¶ 29-32; *People v. Hughes*, 2012 IL 112817, ¶ 63-66; *People v. Brown*, 2017 IL 121681, ¶¶ 48-52; *People v. Hatter*, 2021 IL 125981, ¶ 26. To establish prejudice, the defendant must show, but for counsel's errors, he would have not pled guilty and would have insisted on going to trial. *Hatter*, 2021 IL 125981, ¶ 26. In *Lee* 582 U.S. at 367, the Court stated that a defendant would rarely be able to show prejudice in this context unless the defendant had a viable defense to assert at trial. However, the Court noted that the probability of success at trial is not dispositive of the prejudice analysis. *Id.* It explained, from the defendant's perspective, the consequences of a plea are dire and "even the smallest chance of success at trial may look attractive." *Id.* In *Lee*, counsel erred in failing to inform the defendant that his plea would result in mandatory deportation. *Id.* Because the defendant in *Lee* established that deportation was a determinative issue for him and his plea would certainly lead to deportation, he established prejudice where a trial provided the slight chance that he would be found not guilty and avoid deportation. *Id.* at 371. While the analysis under these circumstances is slightly different than that set forth in *Strickland*, the analysis remains focused on the outcome of entire proceedings by requiring a showing of viable success at trial or potential avoidance of a certain consequence by the plea.

¶ 32 The outcome of the proceeding has also been the focus for ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Under such a claim, the defendant establishes prejudice if he shows a reasonable probability that, but for appellate counsel's error, "he would have prevailed on his appeal." *Id.*

11

¶ 33 Defendant points to no case allowing for a finding of prejudice based solely on the outcome of a pretrial hearing. As such, I stick to the long-standing principle that prejudice is shown where the defendant establishes that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

¶ 34 This conclusion is further supported by precedent addressing motions to suppress. In order to succeed on a claim of ineffective counsel in that situation, the defendant establishes prejudice by showing "a reasonable probability that: (1) the motion would have been granted, and (2) the outcome of the trial would have been different had the evidence been suppressed." *People v. Patterson*, 217 Ill. 2d 407, 438 (2005) (citing *People v. Orange*, 168 Ill. 2d 138, 153 (1995)). Applying this test to the instant circumstances, defendant must show the motion to strike would have been granted and the outcome of the criminal proceeding would have been different had defendant been released.

¶ 35 Here, even if I presume the court would have granted the motion, the outcome of the proceedings has not yet occurred. While it is well established that trial counsel's pretrial actions may trigger sixth amendment rights, "[t]he fundamental problem with addressing *Strickland* claims prior to trial is that the outcome of the proceeding has not yet been determined." *People v. Jocko*, 239 Ill. 2d 87, 93 (2010). Just as "there is no way to determine if counsel's errors have affected an outcome that has not yet occurred" when a premature *Krankel* hearing is requested, this court is precluded from engaging in any rational analysis of an event that has yet to occur. *Id.* Accordingly, I would deny defendant's request to find ineffective assistance of counsel and, instead, find any relief requested pursuant to a claim of ineffective assistance of counsel is premature at this juncture.

12

¶ 36　Finally, moving to the merits of the case, defendant's requested relief in the notice of appeal was listed as "pretrial release or pretrial release with conditions including, if needed by the court, electronic monitoring or home detention." The sole issue raised in the notice of appeal, as to the trial court's detention order, was whether the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of the case, or defendant's willful flight.[4] In support, defendant stated that "[h]ome confinement or the imposition of electronic monitoring would mitigate a real or present threat to the safety of any person or persons or the community if he were released."

¶ 37　OSAD's memorandum lists the issues as the State's failure to prove by clear and convincing evidence that (1) defendant was a real and present safety threat[5] and (2) no conditions could mitigate any threat. As to the first issue, defendant contends that, because his charge failed to involve violence and solely involved selling drugs, that drug trafficking cannot be considered a form of dangerousness based on the factors the court must consider. See 725 ILCS 5/110-6.1 (West 2022). Because defendant's argument misrepresents both the facts established in this case and the law, I disagree.

¶ 38　The statute provides a list of factors for consideration (*id.* § 110-6.1(g)(1)-(7)), including "[t]he nature and circumstances of any offense charged"; "[a]ny evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior"; whether defendant "is known to possess or have access to any weapons"; and whether, at the time of the current offense

---

[4]Additional issues listed in the notice of appeal contended the trial court's imposition of conditions of pretrial release were in error. However, the court did not impose conditions of pretrial release, and therefore, such issues are inapplicable here.

[5]While this issue was not listed in defendant's notice of appeal, the issue was argued by both parties on appeal and, therefore, will be considered. *People v. Decaluwe*, 405 Ill. App. 3d 256, 264 (2010).

or arrest, the defendant "was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law." *Id.* § 110-6.1(g)(1), (2)(A), (7), (8). First, defendant points to no section of the Code that states a defendant charged with unlawful possession with the intent to deliver methamphetamine, a Class X felony, is not dangerous and is automatically entitled to pretrial release conditions. Nor is such a finding likely given the legislative purpose of the Methamphetamine Control and Community Protection Act (720 ILCS 646/1 *et seq.* (West 2022)), which states:

> "The purpose of this Act is to reduce the damage that the manufacture, distribution, and use of methamphetamine are inflicting on children, families, communities, businesses, the economy, and the environment in Illinois. The General Assembly recognizes that methamphetamine is fundamentally different from other drugs regulated by the Illinois Controlled Substances Act because the harms relating to methamphetamine stem not only from the distribution and use of the drug, but also from the manufacture of the drug in this State. Because methamphetamine is not only distributed and used but also manufactured here, and because the manufacture of methamphetamine is extremely and uniquely harmful, the General Assembly finds that a separate Act is needed to address the manufacture, distribution, and use of methamphetamine in Illinois." *Id.* § 5.

¶ 39 Second, defendant's argument misrepresents the evidence presented as well as the dialogue between the State and the court during the hearing. Here, in addition to proffering facts related to defendant's admission that the "pills, powder, cannabis, scale and box of sandwich bags in the satchel" belonged to him, the State also presented defendant's criminal history to the court. That

14

history included defendant's most recent 2021 federal conviction for unlawful transport of firearms, for which he served 36 months in the Bureau of Prisons with 41 months total for supervised release, as well as a prior conviction for being a felon in possession of a firearm in 2011.

¶ 40   In response to this presentation, the court asked the State if the federal offenses were prosecuted in the Southern District of Illinois, and the State confirmed they were. The court twice asked if defendant was on mandatory supervised release from the federal convictions at the time the offense was committed, and both times the State responded, "I believe so." The court then asked if the federal government had "done anything with their case." The State responded that it was "not aware of that at this time." Thereafter, the State also proffered defendant's two felony counts in 2009 for aggravated unlawful use of a weapon, a 2003 burglary charge, and a 2003 felony for receiving/possessing a stolen vehicle. The State argued that, while some of the cases were older, it established "a repeated and continual pattern of conduct" and that defendant was not going to comply with any terms of pretrial release given that he was on parole at the time of the offense, further noting the short length of time between his last release and the current offense. Given the exchange between the State and the court, I find defendant's claim that he was found dangerous solely for the current charge of an intent to deliver methamphetamine is disingenuous, at best. The dialogue during the hearing reveals the finding of dangerousness was not solely related to an intent to traffic drugs, and therefore, I would affirm the finding of dangerousness.

¶ 41   As to the second issue, defendant contends the State failed to prove that no condition, or combination of conditions, would mitigate the real and present threat to the safety of any person, persons, or the community. However, the trial court focused on defendant's history and stated, "He's on mandatory supervised release at the time that these allegations come forward." The court

15

continued, "His risk scale is the highest possible level, 12. He got sentenced to 36 to the BOP[6] back in January 2021, and this happens in May of 2022." The court stated that the GPS would not be a deterrent and could not be used for that purpose. The court found that, "based on the proffer, the evidence, what's been put before me today, I just do not see that there are conditions—and I don't think there are any *** that can mitigate the real and present danger or threat that [defendant] poses to the community." The court further stated, "And flowing from that, because of his own— even his own statements about what happened during this event, less restrictive conditions would not ensure the safety of the community." While defendant's memorandum contends the court could have implemented conditions that mitigated the threat, the court was well aware of those options and found them insufficient based on the charges, defendant's history, and his own statements. Upon review of the court's findings, I do not find them to be against the manifest weight of the evidence, and I do not find, based on the facts presented at trial, that the court's order of detention was an abuse of discretion. Accordingly, I would affirm the detention order.

¶ 42    For these reasons, I dissent.

_____

[6]"BOP" is an acronym for the Federal Bureau of Prisons.

*People v. Shannon*, 2024 IL App (5th) 231051

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 22-CF-1583; the Hon. John J. O'Gara, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn Klarquist, and Abigail Hogan Elmer, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |