NOTICE

Decision filed 02/28/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230923-U

NOS. 5-23-0923, 5-23-0924 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | Nos. 21-CF-887, 23-CF-628 |
| | ) | |
| LAVAR A. GILBERT JR., | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justice McHaney concurred in the judgment.
Presiding Justice Vaughan specially concurred.

**ORDER**

¶ 1    *Held*: We dismiss the appeal in case No. 21-CF-887 for lack of jurisdiction where the defendant did not appeal from the entry of a final judgment or order. We affirm the circuit court's detention order in case No. 23-CF-628, where counsel was not ineffective for failing to move to strike the State's petition to detain, and the circuit court's ruling on detention was not an abuse of discretion.

¶ 2    The defendant, Lavar A. Gilbert Jr., appeals the September 28, 2023, order in case Nos. 21-CF-887 (appeal No. 5-23-0923) and 23-CF-628 (appeal No. 5-23-0924), of the circuit court of St. Clair County denying him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T)

1

Act (Act),[1] as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Code); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).

¶ 3      In appeal No. 5-23-0923, the defendant argues that the State failed to prove that the proof was evident or the presumption great that the defendant had committed a qualifying offense under the Code, and that the defendant posed an unmitigable danger to persons or the community. In appeal No. 5-23-0924, the defendant argues that counsel provided ineffective assistance by inviting the circuit court to conduct a detention hearing and failing to argue that the State's petition was untimely pursuant to section 110-6.1(c) of the Code (725 ILCS 5/110-6.1(c) (West 2022)). Alternatively, the defendant argues that the State failed to prove that the defendant should be detained. For the following reasons, we dismiss the appeal in case No. 21-CF-887 (appeal No. 5-23-0923) and affirm the circuit court's detention order in case No. 23-CF-628 (appeal No. 5-23-0924).[2]

¶ 4                                    I. BACKGROUND

¶ 5      On May 28, 2021, the State charged the defendant in case No. 21-CF-887 with one count of the offense of aggravated unlawful use of a weapon (AUUW), a Class 4 felony (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020)). In that case, the defendant posted the required bond on April 8, 2022, and was released from custody, but failed to appear for a court date on May 20, 2022. The

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.
[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 3, 2023), our decisions in these cases were due on or before January 3, 2024, and January 4, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

circuit court issued a no bond bench warrant for the defendant's arrest on that same date. The bench warrant was served on April 11, 2023, and on April 12, 2023, the defendant appeared in court and bond was set at $50,000. The defendant waived preliminary hearing on April 28, 2023, and the public defender was appointed to represent him. On August 23, 2023, the defendant filed a motion requesting a hearing on his conditions of release pursuant to section 110-7.5 of the Code (725 ILCS 5/110-7.5 (West 2022)).

¶ 6    On April 11, 2023, in case No. 23-CF-628, the defendant was charged with one count of first degree murder in violation of section 9-1(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/9-1(a)(1) (West 2022)), in St. Clair County. The circuit court set the defendant's bond in the amount of $1 million, with 10% to apply. A true bill of indictment was entered on April 14, 2023, charging the same offense. The defendant was unable to post bond and remained in pretrial detention. On May 1, 2023, the defendant filed a motion to reduce bond. It does not appear from the record on appeal that a hearing was held on that motion.

¶ 7    On August 23, 2023, the defendant filed identical motions for release pursuant to section 110-7.5 (725 ILCS 5/110-7.5 (West 2022)), in both case Nos. 23-CF-628 and 21-CF-887. In his motion, the defendant requested for the circuit court to either "order his release without the condition of depositing security or set the matter for a hearing pursuant to 725 ILCS 5/110-5 or 5/110-6.1." On September 12, 2023, the State filed identical verified petitions to deny the defendant's pretrial release in both case Nos. 23-CF-628 and 21-CF-887. In both petitions, the State alleged that the defendant "is charged with a forcible felony as defined in 725 ILCS 5/110-6.1(a)(1.5) and the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community."

¶ 8    On September 28, 2023, the trial court called the matter for a hearing in case No. 23-CF-628. The circuit court acknowledged that the case was filed prior to the effective date of the Act,

3

that the defendant had filed a motion for release, and that the State had filed a petition for detention. Neither party objected to the circuit court proceeding to a hearing on the parties' motions. The State proceeded first by proffer, which related only to the evidence surrounding the circumstances of the murder charge in case No. 23-CF-628. When the circuit court inquired about the defendant's criminal history, the State referenced the pending case against the defendant in case No. 21-CF-887.

¶ 9    The defendant's attorney argued at the hearing that the defendant was only the driver of the vehicle and did not shoot the victim. The defendant further argued that he was "not necessarily a danger [to] society" and had ties to the community.

¶ 10    After hearing the parties' proffers and arguments, the circuit court found, in case No. 23-CF-628, by clear and convincing evidence, that the proof was evident and the presumption great that the defendant committed the qualifying offense. The circuit court then found that the defendant posed a flight risk based upon his failure to appear in the past, and that no condition or combination of conditions could mitigate the real and present threat of the defendant's willful flight. The circuit court also found that the defendant posed a real and present threat to the safety of any person or persons or the community and that no condition or combination of conditions could mitigate the real and present danger he posed to any person or persons or the community. In making its ruling, the circuit court made explicit, detailed factual findings in support of its determinations and ultimate ruling. The circuit court issued a written order of detention that same day *only* in case No. 23-CF-628. In its written order, the circuit court noted that the detention hearing was held "pursuant to statute, defendant was charged before 9/18/23 and previous bond conditions were imposed." No order of detention was entered in case No. 21-CF-887.

¶ 11    The defendant timely appealed in both cases utilizing the Notice of Pretrial Fairness Act Appeal 604(h) (Defendant as Appellant) standardized form provided by the Illinois Supreme Court

4

(Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023)), and this court, *sua sponte*, consolidated the appeals for disposition. The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant in both appeals and filed a memorandum in support of Rule 604(h) appeal that addressed the same issues in both cases. The State filed a response to the defendant's appeal that also addressed the same issues in both cases.

¶ 12 The defendant's notice of appeal raised four issues. First, the defendant argues that the State did not prove that the defendant committed the offense charged. In support of that contention, the defendant states that he was "charged with murder in this case but there is no completely dispositive inculpatory forensic evidence, defendant is not alleged to be the actual shooter, and no full confession." Second, the defendant argues that the State failed to prove that the defendant posed a real and present threat to the safety of any person or the community. In support thereof, the defendant wrote that "[o]ther than the charge itself, the People cannot articulate how defendant would threaten society if released." The defendant further noted that he is a resident of the area with seven children that he supports through his employment. He would have a stable place to reside with an aunt or his mother. Third, the defendant argues that the State failed to prove that no condition or combination of conditions would mitigate the real and present threat to the safety of any person or the community. In support of this contention, the defendant wrote: "GPS monitor, pre-trial monitoring, and drug testing can all be employed if defendant were released." The defendant cited the same basis for his final argument, that the State failed to prove that no condition or combination of conditions would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor. Although the defendant made four arguments regarding his claims of error in the standardized appeal form, citing both cases, in its memorandum, OSAD limits its arguments to only two claims, with the same arguments in the supporting memoranda for both cases. The first

5

claim within the memoranda states that the State failed to prove that the proof was evident or presumption great that the defendant committed the charged offense, murder, which was an abuse of discretion. Second, the memoranda argues that the defendant received ineffective assistance of counsel where counsel failed to object or move to strike the State's petition to detain where it was filed outside of the time limits in section 110-6.1(c) of the Code (725 ILCS 5/110-6.1(c) (West 2022)). We will address each in turn.

¶ 13                                II. ANALYSIS

¶ 14                    A. Case No. 21-CF-887 (Appeal No. 5-23-0923)

¶ 15    On appeal, the defendant presents the same arguments in both cases. However, the same arguments do not apply to both cases. We will first consider case No. 21-CF-887. In that case, the defendant was charged with AUUW; however, the defendant's notice of appeal and supporting memorandum indicates that he is appealing, pursuant to Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), from the order entered on September 28, 2023, in case No. 23-CF-628. It is clear to this court that the circuit court did not hold a hearing or rule on the defendant's pretrial detention in case No. 21-CF-887. It appears that these cases were tracking together on the circuit court's docket, which may have caused some confusion in the procedural posture.

¶ 16    As previously noted, the defendant filed an identical motion for release in both cases pending before the circuit court on August 23, 2023. The State filed a verified petition for pretrial detention on September 12, 2023, with both case numbers listed in the caption; however, the State checked the box provided in the form indicating that the defendant was charged with an offense as defined in section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022)). That section applies to first degree murder, but not to AUUW, since AUUW is not a forcible felony. The detention hearing that was held on September 28, 2023, was called to hearing on case No. 23-CF-628. The State proceeded by proffer and only presented evidence on the charge of first degree

6

murder, contained in case No. 23-CF-628. The defendant's notice of appeal in case No. 21-CF-887 indicates that the defendant is appealing from the order entered on September 28, 2023, from the hearing on September 28, 2023, and the order attached to the notice of appeal contains only case No. 23-CF-628 in the caption. A docket order noting the detention order appears in case No. 23-CF-628 and does not appear in case No. 21-CF-887.

¶ 17    Case No. 21-CF-887 was mentioned during the detention hearing on two occasions. The first mention was when the circuit court inquired regarding the defendant's criminal history. The State responded that there "is currently a case pending for this defendant." When asked what kind of case, the State responded, "I believe it's a firearms case from 2021." The second mention of case No. 21-CF-887 was in discussion of the defendant's flight risk. After defense counsel argued that the defendant was not a flight risk, the circuit court pointed out the failure to appear in case No. 21-CF-887, that the defendant did not respond for almost a year, and was served with a no bond warrant for that case when arrested on case No. 23-CF-628. The circuit court made detailed findings regarding case No. 23-CF-628, the murder charge, and did not make any findings regarding the AUUW charge. There does not appear to be an order entered by the circuit court in case No. 21-CF-887, either by written order or by docket entry.

¶ 18    We have an independent duty to consider our jurisdiction and to dismiss an appeal if jurisdiction is lacking. *People v. Jenkins*, 303 Ill. App. 3d 854, 856 (1999). Rule 604(h) allows an appellate court to review an appeal from orders imposing conditions of pretrial release and granting or denying a petition for pretrial release. Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023). Here, the defendant's notice indicates that he is appealing from an order denying him pretrial release in case No. 21-CF-887. No such document appears in the record on appeal, and nothing in the record reflects that such an order was ever entered in the case. Because the record does not reflect that any order or judgment regarding pretrial release was entered in this case, we find that this court is

7

without jurisdiction, and this appeal must be dismissed. See *People v. Thompson*, 2022 IL App (4th) 220020-U, ¶ 26 (dismissing appeal where no written judgment order was entered of record).

¶ 19                    B. Case No. 23-CF-628 (Appeal No. 5-23-0924)

¶ 20    Turning to the defendant's contentions on appeal in case No. 23-CF-628, we will first address the defendant's argument that he received ineffective assistance of counsel where counsel failed to object to the State's petition to deny pretrial release as untimely. The defendant argues that the State's petition to detain was filed outside of the time limits provided in section 110-6.1(c) of the Code (725 ILCS 5/110-6.1(c) (West 2022)). The defendant argues that pursuant to 110-6.1(c), a petition to detain must be filed at the first appearance or within 21 days of the defendant's release. *Id.* The defendant further argues that when no timely petition has been filed and a defendant has been held on an unpaid bond, the State lacks the authority to file a petition to detain, citing section 110-7.5(b), *People v. Vingara*, 2023 IL App (5th) 230698, and *People v. Rios*, 2023 IL App (5th) 230724.

¶ 21    In this case, as in *Rios* and *Vingara*, the defendant was arrested and had monetary bail set prior to the effective date of the Act. The defendant remained in custody because he was unable to post the monetary bail. But, unlike the defendants in *Rios* and *Vingara*, the defendant here initiated this proceeding by filing a motion to reconsider the conditions of pretrial release on August 23, 2023, pursuant to section 110-7.5(b) of the Code; which contains the procedures pertaining to persons charged prior to the Act's effective date. *Rios*, 2023 IL App (5th) 230724, ¶ 17. The State then filed a responsive petition, requesting that the circuit court deny pretrial release.

¶ 22    When a defendant requests reconsideration of his conditions of release pursuant to the Code, the State is permitted to file a responsive petition and make opposing arguments. *People v. Thompson*, 2023 IL App (5th) 230990-U, ¶ 24. This court has found that a petition to deny pretrial release filed in response to a defendant's requests for reconsideration, modification, or removal of

8

previously set conditions of pretrial release falls with section 110-6(g) of the Code (725 ILCS 5/110-6(g) (West 2022)). See *People v. Carter*, 2024 IL App (5th) 230977-U, ¶ 20; *People v. Cummings*, 2023 IL App (5th) 231001-U, ¶ 24; see also *People v. Gray*, 2023 IL App (3d) 230435, ¶ 14. Section 110-6(g) provides for the removal of previously set conditions of pretrial release upon motion by either party or on the court's own motion; it also provides for the increase of conditions of pretrial release at a hearing. 725 ILCS 5/110-6(g) (West 2022); *Cummings*, 2023 IL App (5th) 231001-U. Specifically, section 110-6(g) of the Code provides that "[t]he court may, at any time, after motion by either party or on its own motion, remove previously set conditions of pretrial release, subject to the provisions in this subsection." 725 ILCS 5/110-6(g) (West 2022). Section 110-6(i) further provides that "[n]othing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1." *Id.* § 110-6(i).

¶ 23    Upon a defendant's motion to have his conditions of pretrial release reviewed, the circuit court shall hold a hearing during which the defendant may argue for the most lenient pretrial release conditions, and the State may make competing arguments. *Gray*, 2023 IL App (3d) 230435, ¶ 14. Therefore, the State's petition to deny pretrial release, filed in response to the defendant's request that the circuit court reconsider his previously set conditions of release, was properly filed, and considered by the circuit court. As such, we reject the defendant's contention that his defense counsel was ineffective for failing to move to strike the State's petition during the October 11, 2023, hearing, as the absence of error nullifies any ineffective assistance of counsel argument, because counsel's performance was not deficient for failing to raise a meritless issue. See, *e.g.*, *People v. Stone*, 2018 IL App (3d) 160171, ¶ 20.

¶ 24    Next, the defendant argues, for various reasons, that the circuit court abused its discretion in ordering the defendant's detention. Under the Code, a defendant's pretrial release may only be

denied in certain statutorily limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2022). After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense; that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk; and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the circuit court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)), or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 25    If the circuit court finds that the State proved a valid threat to the safety of any person or the community and/or the defendant's likely willful flight to avoid prosecution, or the defendant's failure to abide by previously issued conditions of pretrial release, then the circuit court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). If the circuit court determines that the defendant should be denied pretrial release, the circuit court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h).

¶ 26    Our standard of review of pretrial release determinations is twofold. The circuit court's factual findings will be reviewed under the manifest weight of the evidence standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under

the manifest weight standard, we give deference to the [circuit] court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Id.* The circuit court's ultimate determination regarding pretrial release, however, will not be reversed absent an abuse of discretion. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 11. An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the circuit court. *Id.*

¶ 27   The defendant's first contention of error is that the circuit court erred in concluding that the State had met its burden that the proof was evident or the presumption great that the defendant had committed the offense charged. The defendant checked the corresponding box on the form notice of appeal and wrote in the provided lines that "there is no completely dispositive inculpatory forensic evidence, defendant is not alleged to be the actual shooter, and no full confession." The defendant also, through OSAD, filed a supporting memorandum that further argued that the State failed to prove that the defendant committed the offense charged.

¶ 28   The defendant was charged by criminal indictment on April 14, 2023, with one count of the offense of first degree murder in violation of section 9-1(a)(1) of the Criminal Code (720 ILCS 5/9-1(a)(1) (West 2022)). The indictment charged that the defendant, on or about April 4, 2023, committed the offense of murder, with intent to kill or injure, when he shot the victim multiple times in the body, causing the death of the victim, without lawful justification and with the intent to kill or do great bodily harm to the victim.

¶ 29   The State proffered that on or about April 4, 2023, at approximately 11:24 p.m., the Cahokia Heights Police Department responded to an area in St. Clair County in reference to a shots fired complaint. Once on scene, a black Hyundai Sonata was located with the registration returning to the victim in this case. Officers located a black male in the driver's seat of the Sonata, having suffered multiple gunshot wounds, and was not conscious or breathing. A witness at the scene had

11

observed and described the physical characteristics of a subject fleeing the area immediately after the shooting, who was picked up by a vehicle and departed the area.

¶ 30   A search of the victim's phone led to the victim's involvement on his social media account with Aliya Zeilman. After search warrants were served on multiple phones, one of the phones showed pictures of Zeilman on the night in question, which matched the description from a witness of the individual running from the scene on the evening of the murder. Messages were located revealing communication between Zeilman and Elijah Tillman about the incident that took place that evening. Additional investigation led officers to the defendant, who stated that on the night in question, he was driving a vehicle occupied by Elijah Tillman and Lamonte Barnes. He knew that "something bad" was going to happen, although he did not say that he knew that the individuals in his vehicle were going to shoot the victim. The defendant admitted that he drove the vehicle with the two individuals to the scene. He witnessed Tillman and Barnes both fire gunshots into the vehicle that was occupied by the victim, and at that time, everybody jumped back into his car. He proceeded to drive Zeilman, Tillman, and Barnes back to Zeilman's residence. The State proffered that the defendant stated that he knew that Barnes and Tillman were armed with firearms, one being a rifle, and one being a handgun. There were shell casings found at the scene of the murder from a rifle and a handgun. One of the witnesses lived next door to the scene of the crime and was able to identify Zeilman as running away from the scene. Zeilman made a video after the murder where she indicated that she was involved in a relationship with Tillman and that he had previously been shot by the victim in October 2022. She then stated, "You spray one of ours, we spray one of yours."

¶ 31   At the hearing, defense counsel argued that the defendant was only the driver, and as such, was not a main participant in the murder. In his supporting memorandum, the defendant argues that there was no evidence proffered by the State that would indicate that the defendant was aware

12

that the individuals in his vehicle had planned to murder the victim. The defendant argues that his admission that he knew "something bad" was going to happen did not necessarily imply something criminal. See *People v. Ramos*, 2020 IL App (1st) 170929, ¶ 65 (defendant's advance knowledge that gang member he provided with a gun would do " 'something stupid' " was not proof that he knew "that a shooting, in particular, was intended," as opposed to a noncriminal "gang confrontation").

¶ 32    In response, the State contends that the circuit court did not abuse its discretion in denying the defendant's pretrial release. The State argues that the circuit court considered all of the proffered facts and ultimately found the facts sufficient to prove, by clear and convincing evidence, that the defendant committed the offense charged. In support of its contentions, the State notes that the evidence indicates that the defendant knew that the armed men he was transporting were going to do "something bad," and that the defendant watched the two men shoot the victim, and then proceeded to drive them away from the scene.

¶ 33    While the indictment charged the defendant with first degree murder as a principal, the circuit court acknowledged that the State was proceeding under an accountability theory. We first note that it is "proper to charge a defendant as a principal even though the proof is that the defendant was only an accomplice." *People v. Ceja*, 204 Ill. 2d 332, 361 (2003).(citing *People v. Nicholls*, 42 Ill. 2d 91, 100 (1969)). Courts permit this pleading practice because accountability is not a separate offense but is an alternative manner of proving a defendant guilty of the substantive offense. *Id.* A person is legally accountable for the conduct of another if "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2022). As our supreme court explained in *Ceja*, "[a]

13

defendant charged as a principal can be convicted on a theory of accountability if supported by the evidence." *Ceja*, 204 Ill. 2d at 361.

¶ 34　In *People v. Taylor*, 164 Ill. 2d 131 (1995), the supreme court acknowledged that neither a defendant's mere presence at the scene of the crime, nor presence at the scene plus knowledge that a crime was being committed, without more, was sufficient to establish accountability. *Id.* at 140. However, the circuit court may infer a common design from the circumstances surrounding the perpetration of unlawful conduct. *Id.* at 141. Proof that the defendant was "present during the perpetration of the offense, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining the defendant's legal accountability." *Id.* Further, the defendant's flight from the scene may also be considered in determining whether the defendant is accountable. *Id.*

¶ 35　In the present case, the proffered evidence indicated that, by his own admission, the defendant drove Tillman and Barnes to the location of the crime knowing that they were armed with firearms and that "something bad" was going to happen, watched them shoot and kill the victim with two firearms, and then drove his companions with Zeilman back to her house. The defendant was present during the offense, maintained a close affiliation with his companions after the commission of the crime, fled from the scene of the crime, and failed to report the crime. As these are all factors the circuit court could reasonably consider in determining legal accountability, we cannot find that the circuit court's finding that the State proved by clear and convincing evidence that the proof was evident or the presumption great that the defendant committed the offense charged was against the manifest weight of the evidence.

¶ 36　Next, the defendant argues that the State failed to prove that he posed a real and present threat to the safety of any person or the community. In support thereof, the defendant wrote that

14

"[o]ther than the charge itself, the People cannot articulate how defendant would threaten society if released." The defendant further noted that he is a resident of the area with seven children that he supports through his employment, and that he would have a stable place to reside in the area with an aunt or his mother.

¶ 37　The statute provides a nonexclusive list of factors that the circuit court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the circuit court may consider evidence or testimony as to factors that include, but are not limited to (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 38　Questions regarding whether the circuit court properly considered the statutory factors in determining dangerousness are reviewed for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. The record reveals that the circuit court heard and considered the required dangerousness factors under section 110-6.1(g) of the Code, highlighting in its oral pronouncement the facts that led the circuit court to the conclusion that the defendant posed a real and present threat to the safety of any person or persons or the community and that no condition or combination

15

of conditions could mitigate the real and present threat to any person or persons or the community. Those facts included the nature and circumstances of the offense charged, *i.e.*, first degree murder involving two firearms. The circuit court also considered the defendant's prior criminal history, including an AUUW charge for which the defendant failed to appear for over a year. The circuit court further considered the defendant's statements to the police regarding the offense.

¶ 39    On review, it is not our function to reweigh the evidence and substitute our judgment for that of the circuit court. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15. We do not find that the circuit court's factual findings were against the manifest weight of the evidence, nor do we find that the circuit court's determination was an abuse of discretion.

¶ 40    The defendant also argues that the State failed to prove that no condition or combination of conditions would mitigate the real and present threat to the safety of any person or the community. In support of the contention, the defendant wrote: "GPS monitor, pre-trial monitoring, and drug testing can all be employed if defendant were released."

¶ 41    In reaching its determination whether there are conditions that could mitigate the real and present danger the defendant poses on any person or the community, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2022).

¶ 42    The defendant's argument, that a GPS monitor, pretrial monitoring, and drug testing could all be employed if the defendant were released, does little to support a finding by this court that the circuit court abused its discretion. The circuit court acknowledged the seriousness of the offense, leading to the death of an individual, and the evidence and characteristics of the defendant;

16

including his criminal history and prior flight from prosecution for the AUUW charge, as well as warrants that were previously issued for various traffic offenses.

¶ 43     The defendant cited the same basis for his final argument, "GPS, Pre-trial, and drug testing can be used to ensure compliance," in support of his assertion that the circuit court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance off the defendant for later hearings or prevent the defendant from being charged with subsequent felony or Class A misdemeanor.

¶ 44     The circuit court found that there was "certainly a flight risk involved," where the defendant had failed to appear in the past and showed a pattern of failing to appear on a felony case, as well as misdemeanor traffic offenses that resulted in warrants being issued on a number of occasions. In light of the facts and evidence before the circuit court, we cannot say that the court's decision was arbitrary, fanciful, or unreasonable, or that no reasonable person would agree with the position adopted by the circuit court. *Swan*, 2023 IL App (5th) 230766, ¶ 11.

¶ 45     The record reveals that the circuit court made the proper findings of fact and law required by the Code. As noted above, the circuit court was presented with evidence that the defendant committed a qualifying offense under the Code, considered the seriousness of the offense, the circumstances surrounding the offense, and the defendant's prior criminal history. The circuit court also heard arguments regarding conditions and circumstances specific to the defendant regarding pretrial release. Based on our review of the record, and any memoranda submitted, we find that the evidence presented was sufficient to support the circuit court's determination, by clear and convincing evidence, that the defendant committed a qualifying offense, poses a real and present danger or threat to the safety of any person or persons or the community, poses a flight risk, and that there are no conditions or combination of conditions that can mitigate the real and present danger or threat the defendant poses on any person or persons or the community or of the

17

defendant's willful flight. Accordingly, we find that the circuit court's determination that the defendant's detention was necessary was not an abuse of discretion.

¶ 46                                III. CONCLUSION

¶ 47     For the reasons stated, we dismiss the appeal in case No. 21-CF-887 (appeal No. 5-23-0923) for lack of jurisdiction. Where we find no abuse of discretion, we affirm the September 28, 2023, detention order of the circuit court of St. Clair County in case No. 23-CF-628 (appeal No. 5-23-0924).

¶ 48     No. 5-23-0923, Dismissed.

¶ 49     No. 5-23-0924, Affirmed.

¶ 50     PRESIDING JUSTICE VAUGHAN, specially concurring:

¶ 51     I agree with my colleagues' dismissal of appeal No. 5-23-0923 (case No. 21-CF-887) for lack of jurisdiction and ultimate affirmation in appeal No. 5-23-0924 (case No. 23-CF-628). However, I disagree with my colleagues' finding that counsel did not err in failing to object to the State's petition to deny pretrial detention because the State can request pretrial detention, pursuant to section 110-6(g), in response to defendant's motion to be released under section 110-7.5.

¶ 52     My dissent in *People v. Robinson*, 2024 IL App (5th) 231099, ¶¶ 32-37 (Vaughan, P.J., dissenting) provides a full explanation of my disagreement with the majority's interpretation of section 110-6(g). In short, like in *Robinson*, I find the State cannot request pretrial detention under section 110-6(g) in response to defendant's motion to modify pretrial release conditions for two primary reasons. First, detention is an outright denial of pretrial release. So, while section 110-6(g) allows a court to add or increase conditions of pretrial release (725 ILCS 5/110-6(g) (West 2022)), a request to detain is not, and cannot be, a condition of pretrial release. Also, section 110-6(g) allows a court to increase pretrial conditions only pursuant to the two types of hearings permitted under section 110-6 (*id.*)—revocation hearings (*id.* § 110-6(a)) and sanction hearings (*id.* § 110-

18

6(b)-(d)). To hold a revocation hearing, defendant must have been charged with certain offenses during pretrial release. *Id.* § 110-6(a). To hold a sanctions hearing, defendant must have been charged with certain offenses during pretrial release or violated a condition of his pretrial release. *Id.* § 110-6(b)-(d). Because the State did not allege that defendant committed any crime during pretrial release or violated any conditions of his pretrial release, section 110-6(g) is inapplicable by its own terms. Accordingly, there is no basis to consider the State's petition to deny pretrial release under section 110-6(g) and the petition is untimely pursuant to section 110-6.1(c)(1).

¶ 53 In any event, my disagreement with the majority's interpretation of section 110-6(g) does not change the outcome of the disposition as it relates to defendant's ineffective assistance of counsel claim. While I disagree with the majority's finding that trial counsel's actions were not erroneous, I agree the ineffective assistance claim does not require reversal.

¶ 54 In the context of the sixth amendment, the United States Supreme Court has held that the right to assistance of counsel is the right to "effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). This level of assistance is evaluated under the standard addressed in *Strickland v. Washington*, 466 U.S. 668 (1984), as adopted in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). "To prevail on a claim of ineffective assistance of counsel [under *Strickland*], a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23. A failure to satisfy either *Strickland* prong "precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 55 Here, defendant argues that counsel performed unreasonably in failing to object to the State's untimely petition to deny pretrial release. He further contends—citing *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)—that had counsel performed reasonably, the trial court would have struck the State's petition.

19

¶ 56    *Strickland* prejudice has always focused on the outcome of the case itself. See *People v. Shannon*, 2024 IL App (5th) 231051, ¶¶ 25-32 (Vaughan, P.J., dissenting). For example, in *Glover v. United States*, 531 U.S. 198, 203 (2001), the alleged error of counsel prejudiced defendant because it increased the ultimate term of imprisonment—*i.e.*, affected the ultimate outcome of the proceedings. *Id.* at 203-04. Similarly, the effect on the outcome of the proceedings was considered when addressing trial counsel's poor advice regarding a plea offer (*Lafler v. Cooper*, 566 U.S. 156, 168 (2012)), trial counsel's failure to inform defendant of a plea offer (*Missouri v. Frye*, 566 U.S. 134, 148 (2012)), or even appellate counsel's failure to present a claim on which defendant "would have prevailed on his appeal" (*Smith v. Robbins*, 528 U.S. 259, 285 (2000)). In each instance, the outcome of defendant's proceedings, *i.e.*, the conviction or imprisonment, was the focus when determining prejudice under *Strickland*. The same is seen in Illinois cases. See *People v. Richardson*, 189 Ill. 2d 401, 412 (2000) (appellate counsel's failure to raise an issue on direct appeal); *People v. Jackson*, 2020 IL 124112, ¶¶ 85, 91 (failure to object to prosecutorial remarks during closing argument of the trial); *People v. Ceja*, 204 Ill. 2d 332, 358 (2003) (same); *People v. Harris*, 182 Ill. 2d 114, 137 (1998) (failure to object to testimony submitted during the trial).

¶ 57    Defendant here has alleged no facts and presented no argument to show that the pretrial release hearing would have any bearing on the ultimate, and yet undetermined, outcome of defendant's pending criminal charges. Without the ultimate outcome, this court is precluded from engaging in any rational analysis of prejudice and defendant's claim of ineffective assistance is premature at this juncture. See *Shannon*, 2024 IL App (5th) 231051, ¶ 35 (Vaughan, P.J., dissenting).

¶ 58    For these reasons, I specially concur.